# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GENE RYAN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) No. 14-cv-0294 (KBJ) |
|  | ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## MEMORANDUM OPINION

Plaintiff Gene Ryan ("Ryan") is an employee of the District of Columbia Fire and Emergency Medical Services Department ("FEMS" or "the Department").  Ryan claims that he uncovered "widespread waste, fraud, and negligence within [FEMS]" while acting as the Department's EMS Oversight Officer, and that shortly after he publicly disclosed what he perceived to be the Department's internal deficiencies, Defendant Kenneth Ellerbe—then Chief of FEMS—removed him from the oversight position and returned him to his previous position of fulltime Firefighter-Paramedic.  (Am. Compl., ECF No. 5, ¶ 3.)  Ryan purportedly persisted in reporting instances of wrongdoing within FEMS, after which he was allegedly subjected to "baseless charges and investigations, threats to his person and his career, and other forms of adverse employment actions[.]"  (*Id.*)

Ryan has filed the instant two-count complaint against Ellerbe and David Miramontes (the former Assistant Chief and Operational Medical Director of FEMS), in their official capacities as Department employees, and also against the District of

Columbia ("the District") (collectively, "Defendants"). (*See id.* ¶ 1.) Ryan's complaint alleges that Defendants unlawfully retaliated against him in violation of the District of Columbia Whistleblower Protection Act ("DCWPA"), D.C. Code § 1-615.51 *et seq.* (*see id.* ¶¶ 236–42 (Count I)), and that Defendants also deprived him of his right to freedom of speech in violation of section 1983 of Title 42 of the United States Code and the First Amendment of the United States Constitution (*see id.* ¶¶ 243–54 (Count II)). Ryan agrees that this Court has original federal question jurisdiction only over his First Amendment claim; he contends that this Court has supplemental jurisdiction over his DCWPA claim under 28 U.S.C. § 1367(a). (*See id.* ¶ 4.)

Before this Court at present is Defendants' motion for summary judgment as to each of Ryan's claims. (*See* Defs.' Revised Mot. for Summ. J. ("Defs.' Mot."), ECF No. 31; Mem. in Supp. of Defs.' Revised Mot. for Summ. J. ("Defs.' Mem."), ECF No. 31-4.) With respect to Ryan's federal cause of action, Defendants point out that Ryan is required to demonstrate "that a municipal 'policy' or 'custom' violated the First Amendment" (Defs.' Mem. at 21), and they maintain that there is "no evidence" that any "final policy maker" here "acted in such a way to create a policy of retaliating against employees for speech[,]" or that Ellerbe, the District's Fire Chief, "even . . . had the final say with regard to policy" (*id.*).[1] For the reasons explained below, this Court agrees with Defendants that Ryan has failed to demonstrate that Ellerbe was a final policymaker whose actions can be imputed to the District of Columbia, or that the District adopted a custom or practice that led to the alleged constitutional harms, or that

---

[1] Page-number citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

the District adopted a policy of inaction or was otherwise deliberately indifferent to the risk that its agents would violate the constitutional rights of Ryan or others. Therefore, this Court finds that Ryan has failed to make the requisite showing of section 1983 municipal liability in support of the First Amendment claim, such that summary judgment must be granted in Defendants' favor with respect to the sole federal claim in the instant complaint.

This Court further concludes that the equitable factors of judicial economy, convenience, fairness, and comity weigh against the retention of this case through the discretionary exercise of the Court's supplemental jurisdiction over the remaining state-law DCWPA claim. Accordingly, Defendants' motion will be **GRANTED IN PART**, and summary judgment will be entered in Defendants' favor with respect to the First Amendment claim (Count II), and the remaining state-law claim (Count I) will be **DISMISSED WITHOUT PREJUDICE**, leaving Ryan with the option of refiling the DCWPA claim in the appropriate local court, should he so choose. A separate Order consistent with this Memorandum Opinion will follow.

I.    **BACKGROUND**

   A.    **Basic Facts And Allegations**[2]

   Ryan alleges he was hired by FEMS as a fulltime Firefighter-Paramedic in October of 2010 (*see* Am. Compl. ¶ 18), and that, in March of 2012, at the behest of Ellerbe, he assumed a new role as the Department's EMS Oversight Officer (*see id.* ¶¶ 30, 32).[3] In the EMS Oversight Officer position, Ryan was "responsible for

---

[2] These facts are undisputed, unless otherwise noted.

[3] Defendants argue that the EMS Oversight Officer position was never formally created or finalized, in part because Ellerbe lacked the authority to create a new position at the Department or to enter into an

observing and reviewing EMS service delivery in the field" and "identify[ing] and recommend[ing] solutions in order to improve the Department's delivery of service." (Pl.'s Revised Statement of Material Facts in Genuine Dispute ("Pl.'s Statement"), ECF No. 33-2, ¶ 6 (internal quotation marks and citation omitted).) In October of 2012, shortly after Ryan presented to FEMS leadership and staff his findings concerning problems with the Department's operations (*see id.* ¶ 62), Ellerbe suspended the EMS Oversight Officer position until "a permanent Oversight Officer c[ould] be selected through the official District of Columbia Department of Human Resources process" (Email from Kenneth Ellerbe to Gene Ryan *et al.* (Oct. 13, 2012), Ex. 23 to Pl.'s Opp'n, ECF No. 33-5, at 140). Despite this suspension of the position, Ryan nonetheless continued to report on what he perceived to be deficiencies within the Department. (*See, e.g.*, Pl.'s Statement ¶¶ 75, 83, 108, 127.)

Ryan alleges that Ellerbe, Miramontes, and other FEMS management harassed him and retaliated against him due to the various reports and disclosures that he made, including by, *inter alia*, removing him as the EMS Oversight Officer (*see* Am. Compl. ¶¶ 3, 89); denying his requests to attend education and other training programs (*see id.* ¶¶ 65, 95, 106–10, 166–67, 201–04, 226–28); failing to promote or transfer him (*see id.* ¶¶ 91–94, 100–01, 119–21, 126–33, 148–49, 205–06, 210–13); requiring him to work

---

employment contract with Ryan. (*See* Defs.' Mem. at 18–19.) Ryan counters that the position *was* formally created, and he argues that, at the very least, whether or not the position formally existed is a dispute of a material fact. (*See* Pl.'s Opp'n at 34–36.) However, because the resolution of this issue is not material to the conclusion the Court reaches in this Memorandum Opinion, the Court need not resolve this question. *Cf. Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

shifts in excess of 36 consecutive hours (*see id.* ¶¶ 151–53, 230); threatening him physically (*see id.* ¶ 155); failing to provide him with proper pay (*see id.* ¶¶ 98–99, 234–35); and subjecting him to accusations, investigations, and disciplinary actions (*see id.* ¶¶ 49, 111–17, 134–47, 168–71, 196–97, 214–22). Ryan also claims that he reported the harassment and retaliation to Ellerbe and others within FEMS over a period of months. (*See, e.g., id.* ¶¶ 66–70, 164–65, 180–84, 189–95, 199.)

## B.  Procedural History

Ryan filed the instant amended complaint against Defendants on June 16, 2014. (*See generally* Am. Compl.)  As to the complaint's sole federal cause of action, Ryan alleges that his disclosures of the Department's purported deficiencies constituted a lawful exercise of his "First Amendment right to speak on matters of public concern" (*id.* ¶ 245; *see also id.* ¶ 246), and that "Defendants violated [his] First Amendment [r]ight[]" of free speech (*id.* ¶ 250) by taking "retaliatory actions against [him] for speaking publicly about [the Department's] mismanagement, fraud, and violations of laws" (*id.* ¶ 249).

The parties have completed discovery, and Defendants have now filed a motion for summary judgment with respect to all of Ryan's claims. (*See generally* Defs.' Mot.; Defs.' Mem.)  As relevant here, Defendants argue that, even assuming *arguendo* that Ryan's disclosures were protected speech, and that his First Amendment rights were violated as a result of the disclosures, the District cannot be held liable under 42 U.S.C. § 1983 because Ryan failed to prove that a "municipal 'policy' or 'custom'" caused those injuries, or that any "final policy maker" was involved in the alleged violations. (Defs.' Mem. at 21.)  Ryan counters that Ellerbe is a final policymaker, who "adopted the policy that was the driving force behind the retaliation [Ryan] experienced

5

following the exercise of his First Amendment right to free speech[,]" "had knowledge of [Ryan's] disclosures[,]" and "knew that a series of disciplinary actions were being taken against [Ryan.]" (Pl.'s Mem. in Opp'n to Defs.' Revised Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 33, at 52.) Ryan further argues that, even though Ellerbe "[had] knowledge of the disciplinary actions repeatedly being taken against [Ryan]," Ellerbe "did nothing" and actually "condoned the repeated attacks against [Ryan and] fail[ed] to intervene in any way." (*Id.*) Thus, Ryan concludes, "[a] reasonable jury could find that Chief Ellerbe, though he may not have issued the disciplinary actions against [Ryan], was implicit [*sic*] in permitting other Department supervisors to retaliate against [Ryan] following his exercising his First Amendment rights." (*Id.*)

Defendants' motion for summary judgment is now ripe for this Court's review. (*See generally* Defs.' Mot.; Defs.' Mem.; Pl.'s Opp'n; Defs.' Reply to Pl.'s Revised Opp'n to Defs.' Revised Mot. for Summ. J., ECF No. 37.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Federal Rule of Civil Procedure 56 provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To make this determination, courts must review all evidence in the light most favorable

to the nonmoving party, and are required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255. However, the nonmoving party must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. Nor can the nonmoving party rely on allegations or conclusory statements; instead, it must present specific facts that would enable a reasonable jury to find it its favor. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B.    Section 1983 Actions And Municipal Liability

In Count II of his complaint, Ryan contends that Defendants are liable under 42 U.S.C. § 1983 for violations of his First Amendment rights. (*See* Am. Compl. ¶¶ 243–54.) Notably, a section 1983 claim against municipal employees in their official capacities "is the equivalent of a suit against the municipality itself[,]" *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 78 (D.D.C. 2009); therefore, even with respect to the claims against Ellerbe and Miramontes, Ryan "must establish *the municipality's* liability for the alleged conduct[,]" *Miller v. City of St. Paul*, 823 F.3d 503, 506 (8th Cir. 2016) (emphasis added) (citation omitted); *see also Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 168 n.4 (D.D.C. 2012) ("Where the suit has been filed against the employer (here the District of Columbia) and one or more employees in their official capacities . . . the claims against the employees merge with the claim against the employer." (emphasis and citation omitted)).

As a general matter, a prima facie case under section 1983 "requires a showing that a person acting under the color of state law caused a deprivation of a constitutional right or federal law." *Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 26 (D.D.C. 2014) (citing *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 690–91 (1978)).

Under *Monell* and its progeny, a municipality such as the District "may be liable for such deprivations only if, first, the plaintiff establishes an underlying violation of the Constitution or other federal law; and second, the plaintiff demonstrates that a basis for municipal liability exists." *Id.*

With respect to the second prong of the inquiry, a municipality cannot be held liable under section 1983 through *respondeat superior* or vicarious liability. *See id.* at 26–27. Instead, "a city can be held liable under Section 1983—either directly or in its role as a supervisor of the employees who undertake unconstitutional actions—only when its *own* policy or custom inflicts the injury." *Id.* at 27 (emphasis in original) (alterations, internal quotation marks, and citation omitted). Thus, to hold a municipality liable under section 1983 for an alleged constitutional violation, a plaintiff must demonstrate "that a custom or policy of the municipality caused the violation." *Blue v. District of Columbia*, 811 F.3d 14, 18 (D.C. Cir. 2015) (internal quotation marks and citation omitted). This means that the record must show an "affirmative link" between the alleged municipal policy and the asserted constitutional violation, "such that [the] municipal policy was the moving force behind the constitutional violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

To this end, "[t]here are four basic categories of municipal action a plaintiff may rely [up]on to establish municipal liability." *Sledge*, 63 F. Supp. 3d at 27 (alterations omitted). These are: (1) "the explicit setting of a policy by the government that violates the Constitution"; (2) "the action of a policy maker within the government"; (3) "the adoption through a knowing failure to act by a policy maker of

actions by his subordinates that are so consistent that they have become custom"; or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Blue*, 811 F.3d at 19 (internal quotation marks and citation omitted). Although Ryan has not identified the category of municipal conduct that caused the First Amendment violations he alleges, the Court will read Ryan's complaint liberally, and will assume that he intends to establish that categories (2), (3), and (4) were at play in the context of the First Amendment claim that he has asserted here.

## III. ANALYSIS

Ryan contends that the District is liable under section 1983 for violating his First Amendment right to free speech based on unlawful retaliation allegedly perpetrated by FEMS management, including Ellerbe, Miramontes, and a slew of other FEMS supervisors. (*See* Am. Compl. ¶¶ 243–54.) Ryan's section 1983 claim is against the District and Ellerbe and Miramontes in their official capacities; hence, it is a municipal liability claim. *See Monell*, 436 U.S. at 690 n.55; *see also Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 (8th Cir. 1999) ("[B]ecause [the] section 1983 suit is against the members of the Board [of Police Commissioners] in their official capacities, it must be treated as a suit against the municipality." (internal citation omitted)); *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) ("A section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself." (internal citations omitted)). Therefore, it is clear beyond cavil that, "[t]o maintain his claim against the District of Columbia and

the individuals sued only in their official capacities, [Ryan] must plead sufficient facts to establish municipal liability." *Hunter v. Corr. Corp. of Am.*, No. 04-2257, 2006 WL 463207, at *1 (D.D.C. Feb. 24, 2006); *see also Davis v. Stratton*, 360 F. App'x 182, 183 (2d Cir. 2010) ("[T]o obtain relief against the municipal officers, sued in their official capacity under 42 U.S.C. § 1983, [a plaintiff] must show that there existed a municipal policy that was being enforced to deny him his constitutional rights.").

For the reasons explained fully below, this Court concludes that Ryan has failed to adduce sufficient evidence to establish that the alleged retaliatory acts resulted from any custom or policy of the District under any of the "four basic categories of municipal action a plaintiff may rely on to establish municipal liability[,]" *Sledge*, 63 F. Supp. 3d at 27 (alterations, internal quotation marks, and citations omitted), and thus, Defendants are entitled to summary judgment on Ryan's constitutional claim. And in the absence of this federal claim, various equitable considerations weigh against the Court's exercise of supplemental jurisdiction over Ryan's DCWPA claim.

### A. Ryan Has Not Established A Basis For Municipal Liability Against the District

Ryan's amended complaint is devoid of any reference to a "custom" or "policy" whatsoever, and it does not allege—even in conclusory terms—that it was a custom or policy of the District that was the moving force behind Ryan's injuries. That deficiency alone can "doom[] his municipal liability claim." *Winder v. Erste*, 905 F. Supp. 2d 19, 31 (D.D.C. 2012). But the parties here have passed the pleading stage, and Defendants maintain that "*there is no evidence* that the Department head, Fire Chief Ellerbe, acted in such a way to create a policy of retaliating against employees for speech or even that

he had the final say with regard to policy." (Defs.' Mem. at 21 (emphasis added).) This Court's review of the record confirms this proposition.

1.  Ellerbe Did Not Possess Authority Sufficient To Create Any Final District Policy That Caused Ryan's Alleged Harms

Ryan's most lucid argument for why a policy of the District was the moving force behind the First Amendment violations he alleges—raised for the first time in his opposition brief—is that Ellerbe "can reasonably be considered as a policymaker by virtue of his utter disregard of the personnel policies in place and his decisions to let management, including Dr. Miramontes, take disciplinary actions that fly in the face of established guidance and have no legitimate basis in order to retaliate against Plaintiff." (Pl.'s Opp'n at 53.) Thus, Ryan appears to believe that a municipal employee's alleged actions and decisions can themselves qualify the employee as a "policymaker" for municipal liability purposes, but he provides no authority for this contention—which is not surprising, as it is not the law.

Rather, "whether a particular official has final policymaking authority is a question of state law[,]" and "the identification of those officials whose decisions represent the official policy of the local governmental unit" concerning the alleged unconstitutional action is "a legal question to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (emphasis, internal quotation marks, and citation omitted). Courts have long concluded that "a final decision maker typically must be at least an agency head or the governing body of an agency." *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 91 (D.D.C. 2011) (internal citations omitted). Moreover, it is clear that the "authority to make municipal policy is the authority to make *final* policy specific to the tortious

conduct[,]" but "[i]f an official's discretionary decisions are constrained by policies not of that official's making, then those policies—rather [than] the official's departure from them—are the act of the municipality." *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011) (emphasis in original) (internal citations omitted). Furthermore, when determining whether a municipal employee—even the head of an agency—has final policymaking authority, courts in this District look for "specific provisions in the D.C. Code" that "grant[] the director authority to promulgate rules for the administration of his respective department with regard to the [specific] conduct at issue." *Id.*

Ryan does not cite any provision of the D.C. Code, or any other evidence, to support his bald assertions that Ellerbe "created a policy of retaliating against employees for exercising their right to free speech" and "had a final say with regard to that policy." (Pl.'s Opp'n at 53.) The most likely reason for Ryan's omission of any such evidence is that none exists; indeed, to the contrary, it appears that Ellerbe did *not* possess final policymaking authority with regard to the alleged retaliatory acts. Chapter 4 of Title 5 of the D.C. Code (which establishes many of the rules and regulations that govern FEMS) does not delegate to the Fire Chief the kind of broad employment, personnel, and discipline-related policymaking authority that courts have found necessary in order for the head of an agency to qualify as a final policymaker for purposes of municipal liability. In fact, that authority is specifically reserved elsewhere: section 5-402 of the D.C. Code expressly empowers the District's Mayor to "appoint, assign to such duty or duties as he may prescribe, promote, reduce, fine, suspend, with or without pay, and remove all officers and members of [FEMS],

according to [] rules and regulations" that "the Council of the District of Columbia, in its exclusive jurisdiction and judgment[,]" establishes.  D.C. Code § 5-402(a).

Other provisions of Chapter 4 further reveal the broad authority that the Mayor and the D.C. Council have over personnel-related matters within the D.C. Fire Department.  *See, e.g.*, *id.* § 5-402(a-1)(1) (the Mayor, with the advice and consent of the Council, shall appoint the Fire Chief); *id.* § 5-405 (the Mayor establishes the workweek and hours for FEMS employees); *id.* § 5-406 (the Mayor prescribes the rules and regulations by which funds are to be expended for uniforms and other equipment); *id.* § 5-409.01 (the Mayor is authorized to provide for the transfer between positions of certain FEMS employees).  Thus, the D.C. Fire Chief lacks the authority that the D.C. Code broadly delegates to the Mayor, which is the kind of authority that is necessary for a municipal employee to qualify as a final policymaker.  *See Banks v. District of Columbia*, 377 F. Supp. 2d 85, 91 (D.D.C. 2005) (finding that the Director of the Department of Mental Health was a final policymaker because the D.C. Code expressly granted her broad powers to oversee and administer the department, to hire and fire employees, and to make all manner of other personnel decisions).

Accordingly, "[c]entral" to this Court's analysis of Ryan's First Amendment municipal liability claim is "whether the D.C. Code specifically grants authority to [Ellerbe] to promulgate administrative rules . . . or policies and procedures[,]" or whether his "discretionary decisions are constrained by policies not of [his own] making."  *Jones v. District of Columbia*, 241 F. Supp. 3d 81, 88 (D.D.C. 2017) (internal quotation marks and citation omitted); *see also Allen-Brown v. District of Columbia*, 54 F. Supp. 3d 35, 42 (D.D.C. 2014) (finding that the Director of the Metropolitan Police

Department's Medical Services Branch was not a policymaker for municipal liability purposes because "[t]here [was] nothing in the record to indicate that [the Director] makes broad departmental policy decisions at all"). And in contrast to the broad authority that the D.C. Code delegates to the Mayor, including the ability to make a broad swath of FEMS personnel decisions, *see, e.g.*, D.C. Code § 5-402(a), the delegation of such personnel-related authority to the Fire Chief is narrow and limited, *see, e.g.*, *id.* § 5-402(b)(1) ("The Fire Chief shall recommend to the Director of Personnel criteria for Career Service promotions and Excepted Service appointments to Battalion Fire Chief and Deputy Fire Chief that address the areas of education, experience, physical fitness, and psychological fitness."). Ryan has not only failed to identify any portion of the D.C. Code that specifically grants authority to the FEMS Fire Chief to promulgate final personnel policies, but also concedes that there were other "personnel policies in place" that should have constrained Ellerbe's discretion (Pl.'s Opp'n at 53), and that the alleged retaliatory actions "were not done in accordance with Departmental policy" (Pl.'s Resp. to Defs.' Revised Statement of Undisputed Material Facts, ECF No. 33-1, ¶ 30). Unfortunately for Ryan, this concession completely undermines any finding that it was *the District's* policies that were the driving force behind the alleged constitutional violations. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986) (Brennan, J., plurality opinion) (distinguishing an employment policy "set by the Board of County Commissioners" from the County Sheriff's unconstitutional exercise of authority delegated to him by the Board); *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995) ("[I]t is the municipality's policies, not the subordinate's

departures from them, that must underlie municipal liability[.]" (internal quotation marks and citations omitted)).

Ryan nonetheless argues that Ellerbe should be deemed a policymaker under *Steinberg v. District of Columbia*, 901 F. Supp. 2d 63 (D.D.C. 2012). (*See* Pl.'s Opp'n at 52–53.) The *Steinberg* court addressed whether the Fire Chief's refusal to implement the D.C. Office of Employee Appeals's express administrative order to reinstate the plaintiff's employment and award him back pay could be the basis for municipal liability, and the court held that, "[w]hile the Fire Chief is not a policymaker when he acts in accordance with personnel policies and administrative decisions, he *is* a policymaker when he exercises the inherent power of his office to *resist their implementation.*" *Steinberg*, 901 F. Supp. 2d at 71 (second emphasis added) (internal citation omitted). But, unlike in *Steinberg*, there is no express order to undertake a particular course of action that Ellerbe intentionally flouted to Ryan's detriment here. Thus, even assuming that *Steinberg* accurately reflects the contours of the law regarding municipal liability, *Steinberg* is clearly distinguishable based on its reliance on an official's affirmative disregard of specific municipal policies, and that case cannot be read to pertain to an employee's mere discretionary diversion from the established personnel policies of the municipality without running afoul of core principles of municipal liability. *See, e.g.*, *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126 (1988) (explaining that the "mere exercise of discretion by an employee" is not sufficient to establish municipal liability for a constitutional violation, because otherwise "the result would be indistinguishable from *respondeat superior* liability[,]" which *Monell* rejected); *Tabb v. District of Columbia*, 605 F. Supp. 2d 89, 96 (D.D.C. 2009) ("[A]

municipality is not liable under § 1983 when the officials responsible for the alleged constitutional deprivation possessed only the authority to make employment *decisions* (i.e.[,] transferring or terminating an agency employee), *not* the authority to set employment *policy* for the City." (emphasis in original) (alterations, internal quotation marks, and citation omitted)).

Other decisions within this District and elsewhere confirm that the Chief of FEMS is generally not held to be a final policymaker for purposes of alleged municipal liability regarding personnel decisions. In *Coleman v. District of Columbia*, 828 F. Supp. 2d 87 (D.D.C. 2011), for example, the court concluded that the Fire Chief did not act as a final policymaker when he adopted the recommendation of a FEMS Fire Trial Board that the plaintiff should be demoted and subjected to a psychological examination, and then subsequently fired the plaintiff when she failed to complete the examination. *Id.* at 90, 92. The court there held that the Fire Chief was not a final policymaker for municipal liability purposes, because "the D.C. Code gives no specific grant of authority to the Fire Chief to set final policy" and, "[i]ndeed, the Mayor and the City Council have expressly reserved supervisory powers to themselves." *Id.* at 92; *see also Sutton v. Billings*, No. 16-cv-3364, 2017 WL 2335555, at *9 (D. Md. May 26, 2017) (observing that, "even if [FEMS] Chief Dean were responsible for the Notice being sent to the wrong address and the subsequent suspension, plaintiff does not allege that Chief Dean was a final decision maker with respect to personnel decisions"); *Hamilton v. District of Columbia*, 852 F. Supp. 2d 139, 150 (D.D.C. 2012) ("The relevant statute in this case, D.C. Code § 5-402(a), specifically grants the Mayor of the District of Columbia the authority to make personnel decisions with respect to [FEMS].

Because the D.C. Code does not grant either plaintiffs' supervisor or Deputy Fire Chief Gary Palmer final policymaking authority, their actions do not subject the District to § 1983 liability." (citing *Coleman*, 828 F. Supp. 2d at 91–92)).

In short, while Ellerbe (and his designees) were undoubtedly authorized to discipline Ryan and to make some of the personnel decisions relating to his employment, there is simply nothing in Ellerbe's job duties as identified in the D.C. Code or in the limited evidence Ryan proffers that supports the conclusion that Ellerbe had the authority to set new employment policy for the District. As a result, Ellerbe's alleged actions cannot be imputed to the District for the purpose of municipal liability.

    2.     <u>The Record Contains No Evidence That The District Had A Policy Or Custom Of Retaliating Against Protected First Amendment Speech</u>

Setting aside the question of whether or not Ellerbe was a final policymaker such that his alleged actions in regard to Ryan's employment qualify as District policy for the purpose of municipal liability, Ryan's section 1983 claim might also be sustained if the record evidence demonstrates that the alleged constitutional violation is so commonplace that it can reasonably be deemed a customary practice of the District. *See Blue*, 811 F.3d at 19. When a plaintiff seeks to establish municipal liability in the absence of an explicit policy, he must allege "concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists." *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (internal quotation marks and citation omitted). "To clear this high hurdle, plaintiffs ordinarily couch 'custom or practice' liability on allegations of practices so persistent and widespread as to practically have the force of law." *Id.* (internal quotation marks and citation omitted); *see also Coleman*, 828 F. Supp. 2d at 92 ("This must be a persistent, pervasive practice

of the city officials, which although not officially adopted, was so common and settled as to be considered a custom or policy." (alteration, internal quotation marks, and citation omitted)).

This Court easily concludes that Ryan has failed to provide enough evidence to demonstrate that the District had a municipal custom or policy of retaliating against employees for exercising their First Amendment rights. Indeed, Ryan makes only the conclusory allegation that a policy of retaliating against employees for exercising their First Amendment right to free speech exists (*see, e.g.*, Pl.'s Opp'n at 53), and he has not "pointed to any other employee who suffered similar retaliation[,]" nor has he demonstrated that the alleged retaliatory actions were widespread or pervasive. *Jones v. Quintana*, 658 F. Supp. 2d 183, 197 (D.D.C. 2009); *see also DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 39 (D.D.C. 2008) (finding insufficient evidence of a widespread custom, practice, or policy where the plaintiff failed to "produce[] any evidence that the Department's alleged discriminatory employment practices impacted a single employee or prospective employee other than himself"). In fact, Ryan does not even allege that "some, most, or all FEMS members making protected speech experience unlawful deprivations of their first amendment rights[,]" *Coleman*, 828 F. Supp. 2d at 93–94 (internal quotation marks and citation omitted), much less provide any evidence to this effect. *See Page*, 999 F. Supp. 2d at 285 ("[The plaintiff] provides no information about whether D.C. jail officials subjected any *other* individuals to strip searches in the absence of reasonable suspicion in the manner he describes, nor does he even allege that the D.C. jail had been conducting these strip searches on a regular basis." (emphasis in original)).

To be sure, "no hard and fast rule exists for the number of examples" of similar unconstitutional actions against other employees a plaintiff must provide in order for a court "to find it plausible that FEMS undertook a consistent policy of [enabling or encouraging constitutional] violations," but this Court "is confident that one example"—which is still one more than Ryan has provided—"coupled with a conclusory allegation[,] is insufficient[.]" *Coleman*, 828 F. Supp. 2d at 93; *see also Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 40 (D.D.C. 2012) (finding insufficient allegations of a custom where the plaintiff cited "only four incidents where fire department management allegedly failed to respond to his requests to provide more information on and to investigate his being placed on leave").

3.    <u>The Record Contains No Evidence That The District Was<br>Deliberately Indifferent To A Pattern Of Unconstitutional Conduct</u>

Nor has Ryan taken any steps toward establishing that the District failed "to respond to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Blue*, 811 F.3d at 19 (internal quotation marks and citation omitted). Deliberate indifference municipal liability occurs when municipal policymakers "knew or should have known of a risk that the complained-of violation would occur, but did nothing to prevent that violation." *Sledge*, 63 F. Supp. 3d at 28 (citation omitted). The deliberate indifference theory of municipal liability mandates a "'stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

To the extent that Ryan argues Ellerbe "did nothing" to stop the alleged retaliatory actions, "condoned" those actions, and "fail[ed] to intervene in any way"

(Pl.'s Opp'n at 52), neither Ellerbe nor any of the other individuals at FEMS were policymakers whose conduct can be attributed to the District for municipal liability purposes. (*See supra* Part III.A.1.) And Ryan has not pointed to *any* evidence that the District, the Mayor, the Council, or anyone with final policymaking authority knew or should have known that Ryan's constitutional rights were being violated.[4] Ryan certainly has not shown that the District was "faced with actual or constructive knowledge that its agents [] probably violate constitutional rights[,]" and nonetheless "adopted a policy of inaction[,]" as is required for a municipality to be held liable based on its deliberate indifference. *Hamilton*, 852 F. Supp. 2d at 150 (alterations, internal quotation marks, and citation omitted).

Ryan's failure to point to any retaliatory acts other than those allegedly visited *upon himself* is another reason why he has not successfully pinned deliberate indifference municipal liability on the District. As a general matter, "proof of a single incident of unconstitutional activity is not sufficient to impose" municipal liability under section 1983, and "simply citing to [the] plaintiff's own experiences does not demonstrate that [he] was the victim of a policy or custom that caused [him] to suffer

---

[4] Notably, Ryan does not argue that his public testimony of February 24, 2014, before the D.C. City Council's Committee on the Judiciary and Public Safety should have put the District on notice of the alleged constitutional violations. Ryan purportedly testified about the "harassment and retaliation he had suffered as a result of raising concerns within the Department" (Pl.'s Statement ¶ 145), and he asserted that he was being "punish[ed], discredit[ed], and silence[d]" (Draft Testimony of Gene Ryan, Judiciary and Public Safety Hearing (Feb. 24, 2014), Ex. 77 to Pl.'s Opp'n, ECF No. 34-4, at 3). But disclosing concerns about alleged retaliation and abuse is "far different from [the plaintiff] informing the D.C. City Council that FEMS suppresses its employees' constitutional rights." *Coleman*, 828 F. Supp. 2d at 94. And this is especially so given that the purpose of the hearing was to "discuss whether the [named] agencies have protocols and procedures in place that enable an effective and timely coordinated response to any emergency anywhere in the District[,]" Council for the District of Columbia, Judiciary and Public Safety Hearing on UOC, FEMS, and MPD (Feb. 24, 2014), http://dccouncil.us/events/judiciary-and-public-safety-hearing-on-uoc-fems-and-mpd—a topic that was not even remotely related to Ryan's statements about the circumstances surrounding his employment.

injury." *Sledge*, 63 F. Supp. 3d at 28 (alterations, internal quotation marks, and citations omitted). This is primarily because "[t]he alleged unconstitutional conduct must be pervasive enough to be so common and settled as to be considered a custom or policy." *Id.* (internal quotation marks and citation omitted). Furthermore, unless the plaintiff "demonstrate[s] a pattern of injuries in order to establish municipal culpability and causation[,]" it could be unfair to impose municipal liability due to the lack of "notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate." *Hamilton*, 852 F. Supp. 2d at 151 (internal quotation marks and citation omitted); *see also Poindexter v. D.C. Dep't of Corr.*, 891 F. Supp. 2d 117, 121–23 (D.D.C. 2012) (finding no deliberate indifference where the plaintiff failed to allege "a purposeful lack of response on the part of the District" to the risk of the deprivation of others' constitutional rights "outside of purported wrongful conduct as to him," and failed to "point to any behavior on the part of the District toward [others] that . . . evidence[d] a deliberate disregard for their constitutional rights").

The bottom line is this: there is no evidence in the instant record that the District has "adopt[ed] a policy of inaction" in the face of knowledge that FEMS officials routinely retaliate against the protected speech of that Department's employees. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Consequently, Ryan has also failed to establish deliberate indifference municipal liability for the purpose of sustaining his section 1983 claim.

**B.** **Equitable Considerations Weigh Against The Exercise Of The Court's Supplemental Jurisdiction Over The Remaining State-Law Claim**

Having concluded that Defendants are entitled to summary judgment with respect to Ryan's constitutional claims based on his failure to demonstrate that any custom or policy of the District caused his alleged First Amendment injuries, Ryan's sole remaining claim sounds in state, not federal, law. This Court has jurisdiction over the DCWPA claim that Ryan has brought under D.C. Code § 1-615.51 *et seq.* (Count I), because that claim forms "part of the same case or controversy" as the federal claim over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). However, given that summary judgment must be entered in the District's favor on the federal claim, this Court must decide whether to "decline to exercise supplemental jurisdiction" over the state-law claim. *Id.* § 1367(c)(3); *see also Ali Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011) ("Whether to retain jurisdiction over pendent . . . claims after the dismissal of the federal claims is a matter left to the sound discretion of the district court[.]" (internal quotation marks and citation omitted)).

"General equitable factors guide the decision whether to exercise supplemental jurisdiction, including judicial economy, convenience, fairness, and comity." *Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 82 (D.D.C. 2016) (internal quotation marks and citation omitted). As the Supreme Court has noted, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Moreover, "the D.C. Circuit has cautioned that the Court has 'an obligation to exercise its discretion to remand the case to the District of Columbia courts once the federal

question, like Elvis, ha[s] left the building.'" *Kyle v. Bedlion*, 177 F. Supp. 3d 380, 400

(D.D.C. 2016) (alteration in original) (quoting *Araya v. JPMorgan Chase Bank, N.A.*,

775 F.3d 409, 418–19 (D.C. Cir. 2014)).

This Court has determined that the applicable factors weigh in favor of declining

to exercise supplemental jurisdiction over Ryan's remaining claim. To begin with, this

Court has reached its conclusion regarding the need to award summary judgment to the

District on the federal claim without considering the facts and circumstances

underpinning Ryan's DCWPA allegations. Indeed, although this case has had a

protracted procedural history in federal court, this Court has developed no familiarity

with the issues presented by Ryan's state-law claim, nor has it invested time and

resources on that claim, because there is no overlap between the arguments and

evidence supporting Ryan's DCWPA claim and the municipal liability issues that his

federal claim presents. Judicial economy therefore does not weigh against dismissal.

*See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (affirming the district

court's decision not to exercise supplemental jurisdiction where the litigation had

proceeded for four years in the district court prior to the dismissal of the plaintiff's

federal claims, and where the district judge had served for 18 years as a D.C. Superior

Court judge and was familiar with local District of Columbia law).

Considerations of comity also point in favor of allowing Ryan to pursue his

claim in state court. *See Steinberg v. District of Columbia*, 952 F. Supp. 2d 22, 31

(D.D.C. 2013) ("Comity would be served by allowing the D.C. Courts to address these

remaining issues, which concern matters of D.C. law and administration."). Ryan's

state-law claim sounds entirely in an area of law far more familiar to the District of

Columbia Superior Court than this one. *See Yancey v. District of Columbia*, 991 F. Supp. 2d 171, 181 (D.D.C. 2013) (concluding that "[t]he factors enumerated in Section 1367(c) . . . weigh in favor of declining to exercise supplemental jurisdiction over the remaining [common law] claims[,]" in part because "the District of Columbia Superior Court would naturally have greater familiarity and interest in the issues that remain, insofar as they require interpretation of the District's own statutory and common law" (internal quotation marks and citation omitted)). Furthermore, as other courts have noted, no undue unfairness attaches to a federal court's decision to decline to exercise supplemental jurisdiction over a pendent state law claim, and the plaintiff ordinarily will not be prejudiced by the delay, because section 1367(d) of Title 28 of the United States Code "tolls the statute of limitations during the pendency of the federal case and for at least 30 days thereafter." *Kyle*, 177 F. Supp. 3d at 400 (internal quotation marks and citation omitted).

These and other similar considerations lead this Court to conclude that Ryan's DCWPA claim should be dismissed without prejudice. Ryan may bring that claim, if he so chooses and if it is not otherwise barred, in the appropriate local court. *See, e.g.*, *Powers-Bunce v. District of Columbia*, 659 F. Supp. 2d 173, 182 (D.D.C. 2009) (granting summary judgment in favor of defendant as to plaintiff's sole federal cause of action, declining to exercise supplemental jurisdiction over the remaining local-law claims, and dismissing the local claims without prejudice).

## IV.     CONCLUSION

For the reasons explained above, this Court finds there is no evidence "that a custom or policy of the [District]" caused the alleged violations of Ryan's

constitutional rights, *Blue*, 811 F.3d at 18 (internal quotation marks and citation omitted), and therefore, Defendants are entitled to summary judgment with respect to Ryan's First Amendment claim.  This Court further finds that equitable considerations weigh against the exercise of this Court's authority to retain supplemental jurisdiction over Ryan's state-law claim.  Accordingly, and as set forth in the accompanying Order, Defendants' motion for summary judgment will be **GRANTED** as to the First Amendment claim (Count II), and the DCWPA claim (Count I) will be **DISMISSED WITHOUT PREJUDICE**.

DATE:  March 2, 2018

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge